USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAR WASHINGTON,

Plaintiff,

-against-

DANIEL MARTUSCELLO III, *et al.*,

Defendants.

No. 24-cv-7630 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Omar Washington ("Plaintiff"), who is currently incarcerated at Sing Sing Correctional Facility (the "Facility"), commenced this *pro se* action on October 1, 2024, pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1(a), 2000cc-5(4)(A), alleging violations of his constitutional and statutory rights to freely exercise his religion. Plaintiff asserts claims against Defendants Daniel Martuscello III, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), in his official capacity, as well as Lieutenant Clarence Fisher, Sergeant Maribel Lopez, Sergeant Latesha Bell, and Correctional Officer Kayla White, each in their individual capacities as employees of the Facility. Plaintiff alleges violations of his rights under the First Amendment, the Fifth Amendment, the Eighth Amendment, the Fourteenth Amendment, and RLUIPA.

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Defendants have moved to dismiss the Complaint. Defendants filed their Memorandum of Law ("Def. Mem.," ECF No. 26) and their Reply ("Def. Reply," ECF No. 29) in support of their motion to dismiss. Plaintiff filed an Opposition. ("Pl. Opp.," ECF No. 25.)

For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following background is drawn from the Complaint, and the Court accepts the allegations as true and draws all reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is currently incarcerated at the Facility. (*See* Compl. § II. A) He is a member of the Muslim religion. (*Id.* ¶ 19.) Plaintiff alleges that he was unlawfully denied the opportunity to participate in Ramadan observances on March 13, 14, and 18, 2024. (*Id.* § II. C.) Specifically, Plaintiff alleges that the "School Building" security personnel intentionally prevented him from participating in Ramadan services, disregarded the procedures outlined in the Facility administration's approved Special Events Package, failed to ensure that he received Ramadan feed-up trays and *sahoor* bags on those three occasions, and denied him the opportunity to participate in the congregational breaking of the fast in the mess hall. (*Id.* ¶¶ 8–22.)

According to Plaintiff, on the evenings of March 11 and 12, 2024, at approximately 7:45 p.m., Correctional Officer White permitted a group of incarcerated individuals registered with the Nation of Islam ("N.O.I.") to travel from the School Building to the Housing Block Building ("HBB") mess hall to participate in Ramadan observances. (*Id.* ¶ 8.) On the evening of March 13, 2024, at approximately 7:45 p.m., Plaintiff, along with approximately ten other incarcerated individuals registered with the N.O.I., approached Correctional Officer White's desk. (*Id.* ¶ 9.) The group informed Officer White that they were assembled for transport from the School Building to the mess hall to participate in the Ramadan meal. (*Id.*) Officer White, however, informed Plaintiff

and the other incarcerated individuals that Sergeant Lopez, who oversaw the mess hall, had issued direct orders "not to place N.O.I. Ramadan participants on a run from the School Building to the mess hall." (*Id*. ¶ 10.)

At approximately 8:00 p.m., Plaintiff requested to speak with an area supervisor in an effort to resolve what he believed to be a misunderstanding between himself and Officer White. (*Id*. ¶ 11.) Several minutes later, Correctional Sergeant Bell arrived. (*Id*. ¶ 11.) At approximately 8:10 p.m., Plaintiff presented Sergeant Bell with the N.O.I. Special Events Package (*Id*. ¶ 12.) According to Plaintiff, the package was a standard document prepared by DOCCS personnel. (*Id*.) The package had been reviewed, approved, and signed by Acting Superintendent Thorpe, Deputy Superintendent of Programs E. Velez, First Deputy Superintendent of Security B. Thorpe, the Deputy Superintendent of Administration, and N.O.I. Chaplain Minister Henry Allen Muhammad. (*Id*.) The package set forth the procedures governing Ramadan observances within the Facility. (*Id*.)

The Complaint further alleges that, after listening to Plaintiff's concerns, Sergeant Bell stated that Sergeant Fisher had instructed her to compile a list of all N.O.I. participants housed in the School Building, including their housing locations. (*Id*. ¶ 13.) Plaintiff alleges that he then provided his name and housing location for inclusion on the list. (*Id*.) Plaintiff contends the purpose of this list was to ensure that all listed individuals could receive a "feed up tray" at their housing location upon arrival from the School Building, since they were not permitted to go to the mess hall. (*Id*. ¶ 14.) Upon arriving at his unit around 8:45 p.m., however, Plaintiff alleges that there was no feed up tray or *sahoor* bag awaiting him. (*Id*. ¶ 15.) Plaintiff alleges that he was not only unable to participate in the congregational breaking of the fast but also was denied an entire meal due to the alleged obstruction and "incompetence" of the Facility's staff. Plaintiff further

alleges that he could not properly break his Ramadan fast in the early morning hours because he did not receive a *sahoor* bag. (*Id.*)

The Complaint likewise alleges that the same process occurred on the evenings of March 14 and 18, 2024. (*Id.* ¶ 16.) Plaintiff was denied access to the mess hall from the School Building, and he was deprived of a meal and a *sahoor* bag upon arriving at his housing unit from the School Building. (*Id.*) Due to these events, on April 4, 2024, Plaintiff filed a grievance alleging that Facility officials had denied him—a registered N.O.I. participant—the opportunity to attend and participate in certain Ramadan observances, including the congregational breaking of the fast, on three evenings and three mornings during Ramadan.[1] (*Id.* ¶ 18.) Plaintiff further alleges that he has been a registered N.O.I. member within DOCCS since 2010 and regularly participates in Ramadan services, Jumah prayer services, and Islamic classes. (*Id.* ¶ 19.) At the time of the events at issue, Plaintiff served as the incarcerated individual facilitator for the N.O.I. in the Facility. (*Id.*)

Although Plaintiff was allegedly denied his Ramadan feed-up trays and *sahoor* bags, the same was not true for other incarcerated individuals at the Facility. According to Plaintiff, other incarcerated N.O.I. and Muslim individuals housed in the Facility were permitted to receive Ramadan feed-up trays and *sahoor* bags upon returning from the School Building to their housing units on March 13, 14, and 18, 2024, whereas individuals housed in Housing Block 7, including Plaintiff, were not afforded the same accommodation. (Compl. ¶ 22.)

Based on the foregoing allegations, Plaintiff asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments, in addition to RLUIPA. (*Id.* ¶ 25.) Plaintiff seeks declaratory relief

---

[1] Despite Plaintiff filing a grievance, he alleges that no grievance hearing was conducted, and no facility investigation was undertaken at the Facility. (Compl. § IV.) Plaintiff subsequently appealed the matter to the Inmate Grievance Resolution Committee on April 16, 2024. (*Id.*) Plaintiff further alleges that the Superintendent failed to respond to the appeal within twenty-five days, as required by state regulations. (*Id.*) Plaintiff thereafter appealed to the Central Office Review Committee ("CORC") on June 6 and June 27, 2024. (*Id.*)

against Defendant Daniel F. Martuscello III in his official capacity. (*Id.* ¶ 3.) Plaintiff also seeks $100,000 in compensatory damages, for which Defendants Fisher, Lopez, Bell, and White would be jointly and severally liable, and $50,000 in punitive damages against each of those Defendants, who are sued solely in their individual capacities. (*Id.* ¶¶ 4–7.)

## PROCEDURAL HISTORY

Plaintiff commenced this *pro se* action on October 1, 2024. (ECF No. 1.) On September 16, 2025, the Court granted Defendants leave to file a motion to dismiss. (ECF No. 22.) Defendants thereafter filed their Memorandum of Law in support of the motion on October 24, 2025. (ECF No. 26.) Plaintiff filed his opposition on December 5, 2025. (ECF No. 28.) Defendants filed their reply memorandum in further support of the motion on December 18, 2025. (ECF No. 29.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that

plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "where, as here, [P]laintiff proceeds *pro se*, the court must construe [his][complaint] liberally and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Corbett v. Annucci*, 2018 WL 919832, at *5 (S.D.N.Y Feb. 12, 2018); *Askew v. Lindsey*, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## II. 42 U.S.C. § 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of

the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Defendants move to dismiss the Complaint on several grounds. First, Defendants argue that they lacked personal involvement in the alleged constitutional violations. (Def. Mem. at 1.) Second, Defendants argue that the claims against Defendant Martuscello in his official capacity are barred by the Eleventh Amendment, and that Plaintiff has failed to plead standing for declaratory relief. (*Id.*) Third, Defendants argue that Plaintiff fails to allege a RLUIPA, Equal Protection, or Free Exercise claim. (*Id.*) Finally, Defendants argue that, even if the Court agrees with Plaintiff's claims, Defendants are entitled to qualified immunity. (*Id.*) The Court addresses each argument in turn.

### I. 42 U.S.C. § 1983 Claims

The Court begins by analyzing Plaintiff's Section 1983 claims. Specifically, Plaintiff alleges that Defendants violated the First, Fifth, Eighth, and Fourteenth Amendments by preventing him from participating in Ramadan observances, denying him the meals and accommodations associated with those observances, and treating him differently from similarly situated incarcerated individuals. (Compl. ¶¶ 20–22.) At the outset, however, Plaintiff fails to

plausibly allege standalone violations of the Fifth[2] and Eighth[3] Amendments. The Court therefore considers only Plaintiff's First and Fourteenth Amendment claims.

### A. Sovereign Immunity and Official Capacity Claims

As a threshold matter, the Court must determine whether Plaintiff's official capacity claim for declaratory relief against Defendant Martuscello is barred by the Eleventh Amendment.

Absent abrogation by Congress, a state is immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–56 (1996); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990). This immunity extends to "arms of the state," which includes "officers employed by agencies such as DOCCS." *See Peck v. Annucci*, 2025 WL 3022454, at *7 (S.D.N.Y. Oct. 29, 2025) (dismissing § 1983 claims seeking monetary damages against DOCCS personnel in their official capacities under the Eleventh Amendment); *Williams v. Annucci*, 2018 WL 3148362, at *10 (S.D.N.Y. June 27, 2018) (dismissing § 1983 claims seeking monetary damages against DOCCS Commissioner in his official capacity because they "cannot stand" in light of sovereign immunity); *Matteo v. Perez*, 2017 WL 4217142, at *7 (S.D.N.Y. Sept. 19, 2017) (dismissing § 1983 claims against DOCCS official because of Eleventh Amendment). In other

---

[2] To the extent Plaintiff seeks to assert a claim under the Fifth Amendment, the Complaint contains no factual allegations supporting such a violation. In any event, any such claim fails as a matter of law because the Fifth Amendment applies only to actions of the federal government and federal officials, not state actors. *See*, *e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (addressing the Fifth Amendment's Due Process Clause as applied to the federal government); *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) ("The Fifth Amendment . . . applies to and restricts only the Federal Government."). Because all Defendants are officials or employees of the DOCCS, Plaintiff cannot state a plausible claim under the Fifth Amendment.

[3] To the extent Plaintiff seeks to assert a claim under the Eighth Amendment, the Complaint fails to state a plausible claim for relief. The Complaint contains no factual allegations suggesting that Defendants used excessive force, acted with deliberate indifference to Plaintiff's serious medical needs, or subjected Plaintiff to unconstitutional conditions of confinement. Rather, Plaintiff alleges only that he was denied the opportunity to participate in certain Ramadan observances, including congregational fast-breaking meals and associated religious meal accommodations, on three occasions. (Compl. ¶¶ 20–21.) Although such allegations may implicate Plaintiff's rights under the First Amendment and RLUIPA, they do not, without more, give rise to a claim under the Eighth Amendment. *See Wright v. Goord,* 554 F.3d 255, 268–69 (2d Cir. 2009) (holding that temporary restrictions on religious exercise did not constitute cruel and unusual punishment under the Eighth Amendment). Accordingly, to the extent Plaintiff purports to assert an Eighth Amendment claim, that claim is dismissed.

words, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . . that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in their official capacity is "not a suit against the official but rather is a suit against the official's office").

In the context of Section 1983, claims against state officers in their official capacities must be dismissed because such officials are not considered "person[s]" within the meaning of the statute. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996) (affirming dismissal of § 1983 claims against DOCCS superintendent in official capacity). A limited exception exists, however. State officials may be sued in their official capacities where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–56 (2011) (citing *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123, 159–160 (1908)); *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), *cert. dismissed*, 569 U.S. 1040 (2013); *KM Enterprises, Inc. v. McDonald*, 518 Fed. Appx. 12, 13 (2d Cir. 2013). This exception does not apply when a plaintiff seeks money damages. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities.").

Here, Plaintiff seeks declaratory relief against Defendant Martuscello. (Compl. § V.A.1.) However, Defendant Martuscello, as DOCCS Commissioner, was employed by DOCCS during the events giving rise to this action and is therefore "effectively, arms of [the] state." *Gollomp*, 568 F.3d at 366. Plaintiff is consequently barred from pursuing damages against him in his official

capacity. *See Pineda v. Doe 1-2*, 2025 WL 2145661, at *3 (S.D.N.Y. July 29, 2025) ("The Eleventh Amendment therefore precludes Plaintiff's claims . . . under Section 1983 against the individual defendants, in their official capacities, as officers of the State of New York.") As explained above, "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983." *Javier v. Russo*, 2021 WL 4252061, at *5 (S.D.N.Y. Sept. 17, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Mamot v. Bd. of Regents*, 367 F. App'x. 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity."). Nor does Plaintiff benefit from the exception for prospective relief, as the Complaint does not seek such relief. (Compl. § V.) Plaintiff's request for declaratory relief is likewise barred because "absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past." *Mateo v. Westchester Cnty.*, 2020 WL 5802838, at *5 (S.D.N.Y. Sept. 29, 2020). Indeed, the Complaint only challenges Defendants' alleged denial of Plaintiff's participation in Ramadan observances on March 13, 14, and 18, 2024. (Compl. ¶¶ 8-22.) Such relief is retrospective.

The Court therefore dismisses Plaintiff's claims against Defendant Martuscello in his official capacities without prejudice for lack of subject matter jurisdiction. This ruling does not affect Plaintiff's claims against Defendants in their individual capacities.

**B. Personal Involvement**

The Court next considers whether certain Defendants had the requisite personal involvement to sustain liability under Section 1983. Defendants contend that the Complaint fails to allege facts plausibly establishing that these Defendants were personally involved in any

constitutional deprivation and instead seeks to impose liability based solely on their supervisory positions or on actions taken pursuant to the directives of superior officers. (Def. Mem. at 4.) Plaintiff, by contrast, alleges that each Defendant was personally involved in the alleged constitutional violations, either through direct participation in the challenged conduct or through their alleged supervisory responsibilities over the correctional staff responsible for that conduct. (Compl. ¶¶ 3–7.)

It is well settled that "a defendant in a Section 1983 action may not be held liable . . . for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Corbett v. Annucci*, 2018 WL 919832, at *6 (S.D.N.Y. Feb. 13, 2018) (same). To the contrary, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004)). In the context of supervisory liability, the Second Circuit has explained that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

With that legal framework in mind, the Court must dismiss all Section 1983 claims asserted against Defendant Martuscello. Plaintiff seeks relief against Defendant Martuscello based on his alleged "failure to take action to curb known patterns of denying free exercise of incarcerated individuals," (Compl. § V), and sues him solely in his official capacity, (Compl. ¶ 3). The Complaint, however, does not allege that Defendant Martuscello personally participated in the events giving rise to Plaintiff's claims, implemented or enforced the challenged restriction,

directed the alleged conduct, or otherwise had a sufficient connection to the alleged constitutional violations beyond his role as DOCCS Commissioner. (*See generally* Compl.) Rather, Plaintiff's allegations rest solely on Defendant Martuscello's supervisory position and his purported failure to correct the conduct of his subordinates. (Compl. ¶ 25.) Such allegations are insufficient to state a claim under Section 1983 because supervisory officials may not be held liable on a theory of *respondeat superior* or vicarious liability. *See Tangreti*, 983 F.3d at 618; *Iqbal*, 556 U.S. at 676–77.

Even if the Court were to liberally construe Plaintiff's allegations as asserting a failure-to-intervene claim, that claim likewise fails. DOCCS personnel may be liable for failing to intervene only when they had a realistic opportunity to prevent the alleged constitutional violation but failed to do so. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Here, Plaintiff alleges only that Martuscello became aware of the alleged constitutional violations after they had already occurred through the grievance process. (Compl. § IV.) Accordingly, Plaintiff does not plausibly allege that Martuscello had a realistic opportunity to prevent the alleged constitutional violations because he allegedly became aware of the conduct only after it had already occurred through the grievance process. Therefore, Plaintiff fails to state a Section 1983 claim against Defendant Martuscello.

**C. First Amendment: Free Exercise Clause**

The Court next considers Plaintiff's First Amendment Free Exercise claim. Defendants argue that Plaintiff fails to state a claim because the alleged conduct—three instances in which Plaintiff was prevented from participating in Ramadan observances—does not amount to a sufficiently substantial burden on his religious exercise and, therefore, does not rise to the level of a constitutional violation. (Def. Mem. at 9.) Plaintiff responds that being denied the opportunity to participate in the congregational breaking of the Ramadan fast on three separate occasions

constitutes a substantial burden on his sincerely held religious beliefs and is sufficient to state a plausible Free Exercise claim. (Compl. at 2.)

The Free Exercise Clause of the First Amendment prohibits government interference with sincerely held religious beliefs and practices. U.S. Const. Amend. I.; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Although incarceration necessarily imposes certain limitations on constitutional rights, prisoners retain the protections of the Free Exercise Clause and must be afforded reasonable opportunities to practice their religion. *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989). To state a Free Exercise claim, a plaintiff must plausibly allege that: (1) the religious belief or practice at issue is sincerely held; (2) the challenged conduct substantially burdened the exercise of that belief; and (3) the burden was not reasonably related to legitimate penological interests. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *Wiggins v. Griffin*, 86 F.4th 987, 992–93 (2d Cir. 2023). A substantial burden exists where prison officials significantly interfere with an inmate's ability to engage in religious exercise, including by unjustifiably preventing participation in required congregate religious observances. *See Sabir v. Williams*, 52 F.4th 51, 65 n.9 (2d Cir. 2022). In addition, because Plaintiff seeks relief under Section 1983, he must plausibly allege the personal involvement of each defendant in the alleged constitutional deprivation. *See Tangreti,* 983 F.3d at 618; *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005).

**i. Officer White**

First, the Court considers Plaintiff's First Amendment Free Exercise claim against Officer White. Plaintiff alleges that Officer White had successfully facilitated Plaintiff's participation in the Ramadan meal process on the two preceding evenings, during which the process "went smoothly." (Compl. ¶ 10.) On the evening at issue, however, Officer White informed Plaintiff that

Sergeant Lopez, who was supervising the mess hall, had directed her "not to place the N.O.I. Ramadan participants on a run to the mess hall." (*Id.*) Thus, by Plaintiff's own allegations, Officer White did not independently decide to deny Plaintiff access to the Ramadan meal but instead communicated and carried out Sergeant Lopez's directive. Accordingly, Plaintiff fails to plausibly allege that Officer White, through her own individual actions, violated Plaintiff's rights under the Free Exercise Clause. *See Tangreti*, 983 F.3d at 618.

Nor does Plaintiff plausibly allege that Officer White may be held liable for the continuation of an unconstitutional policy or custom. Although officials may, in certain circumstances, incur liability by knowingly permitting an unconstitutional practice to persist, *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Tangreti*, 983 F.3d at 618–20; *Hernandez v. Goord*, 312 F. Supp. 2d 537, 548–49 (S.D.N.Y. 2004); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), the Complaint contains no factual allegations that Officer White possessed authority to establish, modify, or terminate the Ramadan transportation procedure. Nor does it plausibly allege that the procedure was so plainly unconstitutional that Officer White knowingly permitted a constitutional violation to continue merely by following Sergeant Lopez's directive. Rather, the Complaint alleges only that Officer White communicated and implemented Sergeant Lopez's instruction. Such allegations are insufficient to establish Officer White's personal involvement under Section 1983. *See Tangreti*, 983 F.3d at 618. Accordingly, Plaintiff's First Amendment Free Exercise claim against Officer White is dismissed.

**ii. Sergeant Lopez**

Next, the Court considers Plaintiff's First Amendment Free Exercise claim against Sergeant Lopez. Plaintiff alleges that Sergeant Lopez instructed Officer White "not to place the Nation of Islam Ramadan participants on a run to the mess hall from the School Building," thereby

preventing Plaintiff from participating in the Ramadan meal. (Compl. ¶ 10.) Unlike Officer White, Plaintiff alleges that Sergeant Lopez, as the supervising sergeant in the mess hall, made the decision giving rise to the alleged deprivation. (Compl. ¶¶ 5, 10.) Construing the Complaint liberally, as the Court must at this stage, Plaintiff has plausibly alleged that Sergeant Lopez personally participated in the challenged conduct. Although Defendants argue that the Complaint provides "no context" for Sergeant Lopez's alleged instruction, (Defs.' Mem. at 13), that argument is unavailing at the Rule 12(b)(6) stage. Plaintiff is not required to plead Sergeant Lopez's motivation for issuing the directive. Rather, a Free Exercise claim focuses on the objective burden imposed on a plaintiff's sincerely held religious practices, not the subjective intent of the state actor. *See Kravitz v. Purcell*, 87 F.4th 111, 129–30 (2d Cir. 2023); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531–32 (1993). Accordingly, Plaintiff need only plausibly allege that Sergeant Lopez directed the challenged conduct and that the directive prevented Plaintiff from participating in the Ramadan meal. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–56. Accepting Plaintiff's factual allegations as true, Plaintiff has plausibly alleged that his participation in Ramadan constituted a sincerely held religious practice and that Sergeant Lopez's directive substantially burdened the exercise of that practice by preventing him from participating in the Ramadan meal. *See Ford v. McGinnis*, 352 F.3d at 588–94 (holding that denying an incarcerated individual participation in a religious feast central to his faith may substantially burden the free exercise of religion); *Sabir*, 52 F.4th at 65 n.9 (recognizing that preventing incarcerated individuals from engaging in sincerely held religious practices may give rise to a Free Exercise claim). At this stage, the Complaint alleges no legitimate penological justification for Sergeant Lopez's directive, nor is any such justification apparent from the face of the Complaint. Accordingly, drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude as a matter of law that the

alleged restriction was reasonably related to a legitimate penological interest. Plaintiff therefore plausibly states a First Amendment Free Exercise claim against Sergeant Lopez.

**iii. Officer Bell and Lieutenant Fisher**

Finally, the Court considers Plaintiff's First Amendment Free Exercise claim against Sergeant Bell and Lieutenant Fisher. Plaintiff alleges that, after being denied access to the mess hall, he requested to speak with an area supervisor, at which point Sergeant Bell responded. (Compl. ¶ 11.) Plaintiff showed Sergeant Bell the N.O.I. Special Events Package outlining the Ramadan procedures, and Sergeant Bell informed Plaintiff that Lieutenant Fisher had instructed her to collect the housing locations of the Nation of Islam participants so that they could receive a "feed up tray" upon returning to their housing units. (*Id*. ¶¶ 12–13.) Plaintiff provided his housing information and returned to his cell. (*Id*.) Plaintiff alleges that, upon returning to his housing unit, no feed-up tray or *sahoor* bag had been delivered. (Compl. ¶ 15.)

These allegations, however, fail to plausibly establish that Sergeant Bell, through her own individual actions, deprived Plaintiff of his rights under the Free Exercise Clause. *See Tangreti*, 983 F.3d at 618. A defendant cannot be held liable under Section 1983 where her involvement was limited to relaying or implementing another official's directive, without exercising independent decision-making authority or directly participating in the alleged constitutional deprivation. *See Abreu v. Lipka*, 778 F. App'x 28, 30 (2d Cir. 2019) (summary order). Rather, to satisfy the personal involvement requirement, a plaintiff must plausibly allege that the defendant exercised some degree of individual decision-making authority or personally and directly participated in the challenged conduct. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Abreu v. Lipka*, 778 F. App'x at 30. To the contrary, the Complaint alleges that Sergeant Bell attempted to facilitate Plaintiff's receipt of an alternative Ramadan meal by collecting the information necessary for

delivery pursuant to Lieutenant Fisher's directive. (Compl. ¶ 13.) Although Plaintiff ultimately did not receive a feed-up tray, the Complaint contains no factual allegations that Sergeant Bell was responsible for delivering the tray, exercised authority over the delivery process, or otherwise caused Plaintiff to be deprived of the meal. Plaintiff's conclusory assertion that he was denied a meal due to the "obstruction and incompetence of the Correctional staff," (Compl. ¶ 15), is insufficient to plausibly attribute the alleged constitutional deprivation to Sergeant Bell. Accordingly, Plaintiff fails to state a First Amendment Free Exercise claim against Sergeant Bell.

The Court reaches a different conclusion with respect to Lieutenant Fisher. Unlike Sergeant Bell, who is alleged only to have collected Plaintiff's housing information pursuant to Lieutenant Fisher's instructions, Plaintiff alleges that Lieutenant Fisher directed the implementation of the alternative feed-up tray process. (Compl ¶ 13.) Accepting the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Fisher exercised some decision-making authority over the alternative accommodation provided to N.O.I. Ramadan participants. Because Plaintiff further alleges that the alternative accommodation failed, resulting in Plaintiff receiving neither a feed-up tray nor a *sahoor* bag, the Court cannot conclude at this stage that Lieutenant Fisher was not personally involved in the alleged deprivation of Plaintiff's religious exercise. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment Free Exercise claim against Lieutenant Fisher is denied.

**D. Fourteenth Amendment: Equal Protection Clause**

Next, the Court considers Plaintiff's Fourteenth Amendment Equal Protection claim. Defendants argue that Plaintiff fails to state a claim because his allegation that he was denied equal protection on the basis of his religion is undermined by his own assertion that other Muslim incarcerated individuals housed in different housing units were permitted to participate in

Ramadan observances and receive the requested religious accommodations. (Def. Mem. at 10.) Plaintiff responds that he was treated differently from similarly situated incarcerated individuals because participants in the Nation of Islam housed in other units were provided substitute Ramadan meals and permitted to participate in the Ramadan observances, while he was denied those accommodations. (Compl. ¶ 22.)

The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985)). To state an Equal Protection claim under Section 1983, a plaintiff must plausibly allege that: (1) he was treated differently from others similarly situated; (2) the disparate treatment resulted from intentional or purposeful discrimination directed at an identifiable or protected class; and (3) the challenged conduct was not reasonably related to a legitimate penological interest. *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). Purposeful discrimination requires more than mere awareness of a policy's adverse effects; rather, the decisionmaker must have selected or reaffirmed a course of action at least in part because of its adverse effects on the protected group. *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). In the prison context, courts evaluate whether challenged conduct is reasonably related to legitimate penological interests under the framework articulated in *Turner v. Safley*, 482 U.S. 78 (1987). *See Phillips*, 408 F.3d at 129. Accordingly, the Court considers whether Plaintiff has plausibly alleged that he was treated differently from similarly situated inmates because of his religion and, if so, whether the alleged disparate treatment was reasonably related to a legitimate penological interest.

Here, the Complaint does not plausibly allege that Plaintiff was subjected to disparate treatment because of his religion. Although Plaintiff alleges that he personally was denied access to the Ramadan meal and did not receive a feed-up tray, he also alleges that "other incarcerated individuals registered N.O.I. and Muslim . . . were afforded the substitute of receiving a Ramadan feed up tray and *sahoor* bag." (Compl. ¶ 22.) These allegations undermine any inference that Defendants intentionally discriminated against Plaintiff on the basis of his religion. Rather, the Complaint suggests that other inmates of the same religious faith received the very accommodations that Plaintiff claims he was denied. At most, Plaintiff alleges that he received different treatment than other N.O.I. inmates housed in different housing units. However, the Complaint contains no factual allegations permitting the reasonable inference that this disparate treatment resulted from intentional or purposeful discrimination based on religion, as opposed to mistake, negligence, or a failure to implement the alternative meal process. Because Plaintiff fails to plausibly allege that any Defendant acted with discriminatory animus based on Plaintiff's religion, Plaintiff fails to state an Equal Protection claim. Accordingly, Plaintiff's Fourteenth Amendment Equal Protection claims against all Defendants are dismissed.

## II. RLUIPA Claims

Finally, the Court considers Plaintiff's claims under RLUIPA. Plaintiff contends that Defendants substantially burdened his religious exercise by preventing him from participating in Ramadan observances without a legitimate governmental justification, thereby stating a claim under RLUIPA. (Compl. at 2.) Defendants, in turn, argue that Plaintiff fails to plausibly allege that missing three Ramadan observances constituted a substantial burden on his religious exercise and, in any event, that his RLUIPA claims fail because he seeks only monetary damages, which are unavailable under the statute. (Def. Mem. at 8.)

RLUIPA prohibits a government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). To state a claim under RLUIPA, a plaintiff must plausibly allege that the challenged conduct substantially burdened his religious exercise. Once that showing is made, the burden shifts to the government to satisfy RLUIPA's strict-scrutiny standard. *See Holt v. Hobbs*, 574 U.S. 352, 362–65 (2015); *Wiggins*, 86 F.4th at 992–93. However, RLUIPA authorizes only prospective equitable relief, such as injunctive and declaratory relief. 42 U.S.C. § 2000cc-2(a); *Sossamon v. Texas*, 563 U.S. 277, 287 (2011). It does not authorize claims for monetary damages against state officials in either their official or individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam) (holding that monetary damages are unavailable under RLUIPA against state officials in their official or individual capacities in light of *Sossamon*); *Sossamon v. Texas* at 285–93. Accordingly, a plaintiff seeking relief under RLUIPA may pursue only prospective declaratory or injunctive relief.

Here, Plaintiff seeks compensatory damages under RLUIPA against Defendants Fisher, Lopez, Bell, and White. Because RLUIPA authorizes only prospective equitable relief and does not permit claims for monetary damages against state officials in either their official or individual capacities, Plaintiff's request for compensatory relief is dismissed. *See Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam); *Sossamon v. Texas*, 563 U.S. 277, 285–93 (2011).

Plaintiff also seeks declaratory relief against Defendant Martuscello based solely on his position as DOCCS Commissioner and his alleged failure to take corrective action in response to Plaintiff's grievances. (Compl. § V.A.1.) That claim likewise fails. The Complaint does not allege that Martuscello implemented, directed, or enforced the challenged restriction on Plaintiff's

religious exercise or otherwise had a sufficient connection to the alleged RLUIPA violation. Rather, Plaintiff seeks to impose liability solely by virtue of Martuscello's supervisory position and his alleged failure to intervene.

Moreover, Plaintiff seeks only retrospective declaratory relief arising from completed events during Ramadan in March 2024. Plaintiff does not allege that the challenged restriction remains in effect or that he faces an ongoing denial of religious accommodations. Because the Complaint alleges only past conduct and does not plead an ongoing violation of federal law, the requested declaratory relief is barred. *See Green v. Mansour*, 474 U.S. 64, 73 (1985); *Chan v. Campanelli*, 2024 WL 5120014, at *1 (E.D.N.Y. Dec. 16, 2024). Accordingly, Plaintiff's RLUIPA claim for declaratory relief against Defendant Martuscello is dismissed.

**III. Qualified Immunity**

Finally, Defendants assert that Plaintiff's claims should be dismissed because they are entitled to qualified immunity. (Def. Mem. at 11.) "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also, e.g.*, *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Accordingly, for an action to lie, "existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 575 U.S. at 825 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This exacting standard 'gives

government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 575 U.S. at 611 (quoting *al-Kidd*, 563 U.S. at 743) (alteration in original).

Significant here, Defendants pursue qualified immunity on a motion to dismiss. "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004). "[P]laintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* "[T]he motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992)). Defendants therefore face a "formidable hurdle." *Id*. at 434.

Here, construing the Complaint in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court cannot conclude that Defendants Lopez and Fisher are entitled to qualified immunity at this stage. As discussed above, Plaintiff plausibly alleges that Sergeant Lopez personally directed that N.O.I. participants housed in the School Building not to be transported to the mess hall to participate in the Ramadan fast-breaking meal and that Lieutenant Fisher directed the implementation of an alternative accommodation that ultimately failed, resulting in Plaintiff receiving neither a Ramadan feed-up tray nor a *sahoor* bag. (Compl. ¶¶ 10, 15.) Accepting these allegations as true, Plaintiff has plausibly alleged that Defendants personally participated in conduct that substantially burdened his sincerely held religious beliefs without any apparent legitimate penological justification.

Moreover, at the time of the alleged conduct, it was clearly established that incarcerated individuals retain protections under the Free Exercise Clause and that prison officials may not substantially burden an inmate's sincerely held religious exercise absent a legitimate penological interest. *See Ford*, 352 F.3d at 588–94; *Young*, 866 F.2d at 570. Thus, accepting Plaintiff's allegations as true, the Court cannot conclude as a matter of law that a reasonable correctional official would have believed that intentionally preventing Plaintiff from participating in Ramadan observances, or implementing an alternative accommodation that failed to provide any meaningful religious accommodation, was lawful.

Because the Court has dismissed Plaintiff's claims against Defendants Martuscello, White, and Bell on other grounds, it need not separately address qualified immunity as to those Defendants.

## IV. Leave to Amend

Finally, the Court considers whether Plaintiff should be granted leave to amend. The Second Circuit has instructed that "a *pro se* plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citation omitted). Likewise, courts in this Circuit generally afford pro se litigants at least one opportunity to amend their pleadings before dismissing claims with prejudice where a liberal reading of the complaint suggests that a valid claim may be stated. *See Owens v. N.Y.C. Dep't of Sanitation*, No. 12-CV-3138 (KPF), 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013); *Breer v. Maranville*, No. 2:11-CV-301, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012), *report and recommendation adopted*, 2012 WL 6590795 (D. Vt. Dec. 18,

2012). Because Plaintiff is proceeding *pro se* and it is not apparent that amendment would necessarily be futile, the Court grants Plaintiff leave to file a first amended complaint to cure the deficiencies identified in this Opinion and Order.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's Section 1983 claim against Defendant Daniel F. Martuscello III is dismissed with prejudice. Plaintiff's First Amendment Free Exercise claims against Defendants Kayla White and Laesha Bell are dismissed with prejudice. Plaintiff's Fourteenth Amendment Equal Protection claims are dismissed as against all Defendants without prejudice. Plaintiff's claims for monetary damages under RLUIPA are dismissed with prejudice, and Plaintiff's RLUIPA claims for declaratory relief against Defendant Daniel F. Martuscello III is dismissed without prejudice. Defendants' motion is DENIED as to Plaintiff's First Amendment Free Exercise claims against Defendants Clarence Fisher and Maribel Lopez.

Because Plaintiff proceeds *pro se*, and in light of the Second Circuit's instruction that a *pro se* plaintiff should generally be allowed to amend, Plaintiff is granted leave to file an Amended Complaint solely with respect to any claims dismissed without prejudice by this Opinion & Order. If Plaintiff chooses to do so, Plaintiff shall file an Amended Complaint by August 24, 2026. Defendants are then directed to answer or otherwise respond by September 21, 2026. If Plaintiff fails to file an Amended Complaint within the time allowed, and cannot show good cause to excuse such failure, the claims dismissed without prejudice by this Opinion & Order will be deemed dismissed with prejudice, and the Clerk of Court will be directed to close this case.

The Court respectfully directs the Clerk of Court to (1) terminate the Motion at ECF No. 26; and (2) mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on the docket and note service on the docket.

SO ORDERED.

Dated: July 13, 2026
White Plains, NY

__________________________________
Nelson S. Román, U.S.D.J.